UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


VALERIE HEALY                                        PLAINTIFF


VS.                        CIVIL ACTION NO. 3:10CV86TSL-FKB


TOUGALOO COLLEGE                                     DEFENDANT


MEMORANDUM OPINION AND ORDER

     This cause is before the court on the motion of defendant
Tougaloo College for summary judgment pursuant to Rule 56 of the
Federal Rules of Civil Procedure.  Plaintiff Valerie Healy has
responded to the motion and the court, having considered the
memoranda of authorities, together with attachments, submitted by
the parties, concludes that defendant's motion should be granted.

     Plaintiff Valerie Healy was hired by Dr. Bettye Sue
Hennington as a research associate for the Mass Spectrometry Lab
in the Natural Science Division/Biology Department of Academic
Affairs at Tougaloo (the College).  She began work on September
15, 2008, under an initial six-month employment period, during
which time her performance was to be monitored by her
supervisor(s) and the benefits she received (e.g., leave accrual)
were more limited than regular employees.  In February 2009, Dr.
Hennington approached plaintiff and asked her to resign, citing
issues with her performance.  Plaintiff believed her performance
had been satisfactory and refused to resign, whereupon Dr.

Hennington, after obtaining approval from the College's provost, terminated plaintiff's employment on the basis of claimed performance deficiencies.

Following her termination, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, and after receiving a notice of right to sue, filed the present action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq</u>., as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k)(2008)[1], alleging that she was terminated because she was pregnant.  Plaintiff alleges that defendant terminated her both to avoid providing for her maternity leave, which she had planned to take beginning in May 2009, and so that it could move another research associate who was not pregnant into plaintiff's position.  Defendant has denied plaintiff's pregnancy was a factor in the decision to terminate her, and

---

[1]     As pertinent here, the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k)(2008), adds the following to Title VII:
(k) The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e-2(h) of this title shall be interpreted to permit otherwise. ...
...

2

maintains, instead, that she was terminated solely based on performance deficiencies.

As plaintiff admittedly lacks direct evidence of pregnancy discrimination, her claim is analyzed under the familiar McDonnell Douglas framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973). Under this framework, she must first create a presumption of discrimination by making out a prima facie case of discrimination. The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for her termination, which causes the presumption of discrimination to dissipate. Plaintiff then bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status. See Laxton v. Gap Inc., 333 F.3d 572, 578–579 (5th Cir. 2003). Defendant has moved for summary judgment, contending that plaintiff cannot establish a prima facie case of pregnancy discrimination, and that even if she could satisfy her prima facie case, she cannot establish that defendant's proffered legitimate, nondiscriminatory reason for her termination, is pretext for discrimination.

In order to make out a prima facie case of pregnancy discrimination, plaintiff must show: (1) she was a member of the protected class; (2) she was qualified for the position; (3) she

3

was discharged; and (4) she was replaced by someone outside the protected class, or in the case of disparate treatment, that others similarly situated were more favorably treated.  See Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998). Tougaloo argues in its motion that plaintiff cannot establish a prima facie case of discrimination because she cannot show either that she was replaced by someone outside her protected class or that she was treated less favorably than a similarly situated employee outside her protected class.

Plaintiff has alleged that her position at Tougaloo was fully funded by a Research Infrastructure in Minority Institutions Grant (RIMI Grant) issued by the National Institute of Health, National Center of Minority Health and Health Disparities; that the other research assistant position in the Mass Spectrometry Lab, held by Danielle Trocquet, was funded by a grant from the IdEA Networks of Biomedical Research Excellence, National Center for Research Resources, Mississippi Functional Genomics Network (MFGN Grant); and that the MFGM Grant was not going to be renewed for 2009, so plaintiff was terminated so that Trocquet could be transferred to the RIMI Grant.  Plaintiff has theorized that upon her termination, defendant used the RIMI Grant to compensate Turquotte, and in this sense, replaced her with Turquotte, who was not pregnant and hence was outside plaintiff's protected class. However, in support of its motion, defendant has presented

4

evidence, unchallenged by plaintiff, that at the time plaintiff was terminated, the MFGM Grant had been renewed and that defendant had no reason to believe it would not continue.  There is thus no evidence to support plaintiff's allegation that she was replaced by someone outside her protected class.

Accordingly, to establish her prima facie case, plaintiff must show that she was treated differently than "similarly situated" persons who are outside her protected class and who received more favorable treatment than plaintiff under "nearly identical" circumstances.  See Okoye v. Univ. of Texas Houston Health Science Ctr., 245 F.3d 507, 514 (5th Cir. 2001).  Defendant maintains that plaintiff cannot make the necessary showing, either for purposes of establishing her prima facie case, or for purposes of showing that its proffered reason for terminating her employment was pretext for pregnancy discrimination, since her only possible comparator, Trocquet, was not treated more favorably under "nearly identical" circumstances.[2]

---

[2]     Defendant argues that plaintiff had performance problems, which distinguished her from the only possible comparator.  It identifies these same alleged performance problems as its legitimate nondiscriminatory reason for terminating plaintiff's employment.  Plaintiff denies she had the performance problems claimed by defendant and on this basis, claims that she has created a genuine issue of material fact both as to whether she has identified a proper comparator for purposes of her prima facie case and whether she has shown that defendant's proffered legitimate, nondiscriminatory reason for her termination is pretext for discrimination.

For a comparator to be "similarly situated" for purposes of disparate treatment analysis, the plaintiff must demonstrate that the alleged comparator is "similarly situated with respect to their job titles, job duties, responsibilities, qualifications and experience." Stover v. Hattiesburg Public School Dist., No. 2:05CV288KS-MTP, 2007 WL 465664, at *9 (S.D. Miss. Feb. 8, 2007). To have "nearly identical circumstances" to those of the plaintiff, the comparators "must be those employees who had the same supervisor and who committed the same infractions or violations of company policy". Vargas v. Texas A & M Univ., H-05-02797, 2007 WL 150484, at *4 (S.D. Tex. Jan. 16, 2007). That is to say, the comparative employees must be "nearly identical" in their workplace conduct, for the plaintiff does not sustain her burden, either to demonstrate a prima facie case or to show pretext, "when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." See Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001).

Defendant argues that Trocquet, the only other research assistant under Dr. Hennington's supervision, was not in "nearly identical" circumstances to plaintiff because, in contrast to plaintiff, Trocquet did not have performance problems and was instead an excellent employee with an exemplary work history and consistently favorable job reviews. It notes that employees with

6

different work records and conduct simply are not "nearly identical" for purposes of satisfying the "similarly situated" requirement, rendering Healy's claim deficient, as a matter of law.  In support of its position, it has submitted an affidavit from Dr. Hennington detailing deficiencies in plaintiff's performance, including problems plaintiff had in growing cells in an *e Coli* project and her failure to take sufficient detailed notes on the project; her failure to properly maintain the general upkeep of the lab; her failure to oversee the budget and management of laboratory supplies, including failure to maintain the needed level of supplies, to timely order supplies and to conserve expenses in the use of lab equipment, supplies and shipping costs; and her failure to manage her time in an efficient manner so as to give priority to the tasks that were most important.  Dr. Hennington asserts that while she reminded plaintiff of her job responsibilities and gave her direction and suggestions for improvement, plaintiff's performance did not improve to Dr. Hennington's satisfaction, and by mid-February, when Dr. Hennington had not seen and did not expect to see the type of improvement she wanted from plaintiff in order to maintain plaintiff in the position, and being mindful that the end of plaintiff's initial six-month employment period was looming, Dr. Hennington made the decision to proceed with her termination.

7

In her response, plaintiff has submitted her own affidavit in
which she denies each of the alleged performance deficiencies
asserted by Dr. Hennington and further denies she was counseled by
Dr. Hennington regarding her performance.  Plaintiff contends,
based on her affidavit, that she has created a genuine issue of
material fact as to whether she had the performance problems
claimed by Dr. Hennington; and she argues that if the jury were to
find that she did not have performance problems, then Trocquet
would be a proper comparator and defendant's proffered reason for
her termination would be exposed as false, supporting plaintiff's
claim of pretext.  She contends, therefore, that, viewing the
evidence and reasonable inferences to be drawn therefrom in her
favor, the court must deny defendant's motion.

> To carry this burden, the plaintiff must produce
> substantial evidence indicating that the proffered
> legitimate nondiscriminatory reason is a pretext for
> discrimination.  The plaintiff must rebut each
> nondiscriminatory reason articulated by the employer.  A
> plaintiff may establish pretext either through evidence
> of disparate treatment or by showing that the employer's
> proffered explanation is false or "unworthy of
> credence."  An explanation is false or unworthy of
> credence if it is not the real reason for the adverse
> employment action.  Evidence demonstrating that the
> employer's explanation is false or unworthy of credence,
> taken together with the plaintiff's prima facie case, is
> likely to support an inference of discrimination even
> without further evidence of defendant's true motive.  No
> further evidence of discriminatory animus is required
> because "once the employer's justification has been
> eliminated, discrimination may well be the most likely
> alternative explanation...."  The "rare" instances in
> which a showing of pretext is insufficient to establish
> discrimination are (1) when the record conclusively
> reveals some other, nondiscriminatory reason for the

8

> employer's decision, or (2) when the plaintiff creates
> only a weak issue of fact as to whether the employer's
> reason was untrue, and there was abundant and
> uncontroverted evidence that no discrimination occurred.

Laxton v. Gap Inc., 333 F.3d 572, 578 –579 (5th Cir. 2003)
(citations omitted).

In the court's opinion, while plaintiff's affidavit in this case may be sufficient to create an issue of fact as to whether her performance was deficient, it does not cast doubt on Dr. Hennington's assertion that she *perceived* plaintiff's performance was deficient. As defendant notes, "the question is not whether an employer made an erroneous decision; it is whether the decision was made with a discriminatory motive." Mayberry v. Vaught Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995); see also Lemaire v. Louisiana Dept. of Transp. and Dev., 480 F.3d 383, 391 (5th Cir. 2007) ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext. ... [Plaintiff] must do more than dispute the underlying facts and argue that [the employer] made the wrong decision in order to survive summary judgment."); Bryant v. Compass Group USH, Inc., 413 F.3d 471, 478 (5th Cir. 2005) ("Management does not have to make proper decisions, only non-discriminatory ones."). Plaintiff made clear in her deposition that she did not agree that she had any of the deficiencies identified by Dr. Hennington as the reasons for her termination; yet she also testified that she

had no way to question whether Dr. Hennington in fact believed the reasons she gave for plaintiff's termination.[3]

The only potential basis plaintiff has suggested for questioning the veracity of Dr. Hennington's professed perception of plaintiff's performance is that, whereas Dr. Hennington has claimed in her affidavit that she spoke with plaintiff about the performance issues that she ultimately gave for plaintiff's termination, plaintiff denies that Dr. Hennington tried to speak with her about these issues and her concerns at any time during plaintiff's employment.  Plaintiff argues that "the fact that Dr. Herrington [sic] has made up the allegation that she counseled Plaintiff [about performance problems] would lead any reasonable jury to conclude that Dr. Herrington [sic] is lying to cover up her discriminatory animus."  In her affidavit, however, Dr. Hennington does not assert that she confronted plaintiff about her performance shortcomings; instead, Dr. Hennington states that because she observed problems with plaintiff's performance in several areas, she "reminded" plaintiff that she needed to keep the lab clean and instructed plaintiff to check inventory supply levels a couple of times each week and to order supplies if needed.  Two months later, when she was still seeing the same

---

[3]    Plaintiff testified, "I would not agree with her that I had a deficiency in analyzing skills or any other deficiency listed here. I would not have any way to question whether she thought I did or not...."

problems, she "reminded" plaintiff again of what she expected and made "suggestions" of ways to improve her job performance.  Dr. Hennington's description of her discussions with plaintiff relating to what she perceived as problems with plaintiff's performance suggests that she tried to work with plaintiff in a positive manner to improve her performance, which is not necessarily inconsistent with plaintiff's assertion that Dr. Hennington did not point out to her or counsel her about performance deficiencies.

The court observes, moreover, that Danielle Trocquet has submitted an affidavit in which she, like Dr. Hennington, states that she observed that plaintiff failed to keep the lab work area clean and uncluttered, and that she also observed occasions when lab supplies were unavailable, either because they had not been cleaned or had not been ordered.  She testified that she observed Dr. Hennington providing plaintiff with suggestions or reminders for improvement, but in the end, was aware, based on her observations, that Dr. Hennington was not satisfied with plaintiff's performance.

In the court's opinion, based on the foregoing, plaintiff has failed to present substantial evidence indicating that defendant's proffered legitimate nondiscriminatory reason for her termination is a pretext for discrimination.  She has not presented sufficient evidence to create a triable dispute regarding Dr. Hennington's

11

assertion that she considered plaintiff's performance unsatisfactory, and for this reason, the court concludes that summary judgment is in order.

Even if plaintiff had created an issue of fact as to whether defendant's reason is untrue, it is, at best, only "a weak issue of fact," and in the court's view, there is abundant and uncontroverted evidence that no discrimination occurred. Plaintiff's theories concerning defendant's likely motive to discriminate against her because of her pregnancy make no sense. As the court observed supra, both plaintiff's and Trocquet's positions were fully funded, giving Tougaloo (and Dr. Hennington) no reason to terminate her so that the nonpregnant Trocquet could continue her employment with the College. Additionally, while plaintiff has suggested that Dr. Hennington terminated her so as to avoid providing her with maternity leave, plaintiff acknowledged in her deposition that even had she remained employed, she would not have been entitled to maternity leave; rather, she would only have been entitled to her accrued leave time. At most, she would have accrued a mere eight days of paid sick leave which she could have applied to any maternity leave; and eight days of paid leave would have totaled approximately $923.00. Plaintiff herself admitted it would be absurd for an employer to terminate someone just to avoid paying her a mere $923, especially when that amount had already been

budgeted as part of her salary.  Finally, defendant has offered
uncontroverted evidence from the College's Human Resources
Director Doretha Presley, that she has been with Tougaloo since
2005, and during that time, all pregnant employees who have taken
maternity leave have been returned to their former positions; in
2008, three employees requested leave associated with pregnancy
and in each case, the employee returned to work following her
pregnancy-related leave.

For all of the foregoing reasons, the court concludes that in
response to defendant's well-supported motion, plaintiff has
failed to create a genuine issue of material fact on her claim for
alleged pregnancy discrimination.

Accordingly, it is ordered that defendant's motion for
summary judgment is granted.

A separate judgment will be entered in accordance with Rule
58 of the Federal Rules of Civil Procedure.

SO ORDERED this 15th day of March, 2011.


                              /s/ Tom S. Lee
                              UNITED STATES DISTRICT JUDGE